May it please the Court, Angela Dunning of Cooley, LLP, for Plaintiff and Appellant Sazerac. The path to this appeal involves numerous errors. There is a lot to cover. But the district court first began its errors began with its wrongful dismissal of Sazerac's damages claim, which deprived Sazerac of a jury trial. It then dismissed Sazerac's claims about any analysis under Sleetcraft, misapplied the law to its trade dress claim, and then finally awarded fees to Fetzer in a manner that contravenes the law of this circuit. I will be sorry. What was the last point you mentioned? The award of attorney's fees, Your Honor, which was not appropriate given that this is not an exceptional case. So I'll be discussing these errors in order, and then my colleague, Bobby Gajar, will be handling the fees issue. And so we'll be splitting the argument, and I would like to reserve three minutes for rebuttal. Starting with the damages claim, this was a particularly important error to understand because it ultimately deprived Sazerac of the right to a jury. With the damages claim thrown out, only equitable claims remained, and the case went to a bench trial. The district court dismissed Sazerac's damages claim because it found a Rule 26 violation. It found that Sazerac did not adequately disclose its damages theory. But Sazerac did disclose its reasonable royalty damages theory, as well as all of the evidence on which it was based. It produced the license agreements upon which its reasonable royalty would have been calculated. But the license agreements that were produced were like candy and cigars. I don't think there was any license agreement with another alcohol manufacturer, was there? There was not another license agreement with an alcohol manufacturer that was presented in evidence, but the lawyer's claim was that Sazerac did not adequately disclose its reasonable royalty damages theory. And so how could there ever have been enough evidence for a jury to award a royalty-based damages without an expert to testify about damages in this industry or an example of anything analogous? I don't understand how you had produced evidence that could have possibly led to a damages award. Well, this circuit has repeatedly acknowledged that quite crude evidence of damages is sufficient to allow that question to go to a jury. Quite crude evidence? Yes, Your Honor. No expert testimony is required. That's very clear. But you need some evidence. I mean, I don't understand how evidence of, like, napkins or cigars or candy have anything to do with how alcohol manufacturers would cross license or license or anything. I just don't understand. So we put on, we put on executives from the company who would have testified about the licensing program that they had. Well, one of the depositions said there was no license at first, right? And then, and then they produced some licenses that are on a different subject. So how, who was going to testify about this and where did they say anything relevant? So, Your Honor, let me, let me correct a couple points there. There was an interrogatory response early on. Oh, sorry. Okay. Maybe it was an interrogatory. But subsequently, that was supplemented by production of the license agreements and deposition testimony. Fetzer's lawyers questioned two Sazerac witnesses about those license agreements at deposition. But all that they said was, like, is this a license? And they said yes. I mean, that testimony doesn't say this is how we calculated it and in this industry, this is always how we do it or anything like that. Your Honor, the fact that Fetzer didn't ask those questions doesn't mean that we couldn't have put that evidence on at trial or this. But for Rule 26, you had to say what your damages theory was. I mean, I don't understand. And to survive summary judgment, you need evidence. So how were you getting past those thresholds? Well, let me answer that in a couple of ways. With respect to the evidence, there was evidence on which a jury could have found. One of the license agreements had a 50 cent per item royalty. A jury could have found that a per bottle of wine royalty was appropriate here and used that as a benchmark, even if it wasn't. And you said something about rough calculations or something. I mean, what case tells us that if a jury did that, the judge would be allowed to uphold that as a valid verdict with a valid, you know, with enough evidence to support it? Well, DSPT International from this Court in 2010 held very clearly that the law does not require expert testimony and that very crude measurement of damages, many different kinds of things. A jury could look at that. So in that case, was there analogous royalty payments that were more similar than what we have here? That was not a royalty case, Your Honor. But the point is that a jury could look at this evidence and the jury is allowed to figure out what a reasonable royalty is and could say here was 50 cents an item. We had other license agreements in the record that were produced to FETSER that it asked witnesses about in which there was a fair amount of royalty. So it's very clear about one thing. You can multiply 50 cents per item times 2.9 million bottles of wine sold, all of which was in the record, and get 1.45 million. But only if 50 cents per item is a reasonable royalty or expected royalty in this industry. And we had an alcohol industry expert who offered evidence at summary judgment and could have testified on this issue at trial. Wait, but there was no expert disclosed. Isn't that the point here? This expert was disclosed and did give a report. There wasn't a damages expert disclosed. So was the expert you're now talking about someone who testified about royalty rates? Your Honor, the royalty rates were in the record as part of the license agreements. And so, no, there was enough for a jury to use the evidence that was put in by Sazerac to determine that a royalty would be appropriate. There are similarities between these products in that another company, like the candy company or the company that sold barrel heads from the tops of barrels, those companies were willing to pay on a per item basis or a percentage of retail basis. It would be reasonable to expect a company like Fetzer, who took a logo marketed to the same consumers through the same channels in the same stores, using the logo and many different aspects of our trade dress, that they could be expected to pay some reasonable amount as well. Could I ask you a question? I don't know if it's a record or not. I know you've read Judge Oreck's records quite a few times. He's pretty a detailed case manager. And this case went through case management process. And during that process, I get the feeling from reading what I was able to read of the record that there was a change in the in the strike force of your client and that he sort of feel that this should have been disclosed during case management and taken care of and the depositions occurred. Is there anything of that in the record where we have held, we have upheld case management principles quite specifically in our cases? Is there any of that in this record here? I'm not sure if I understand what when you say there was a change in the strike force. I get concerned that that the issue is that I don't read I don't read any specific statement from Judge Oreck, but I sort of get the feeling that he thought he was sandbagged. Your Honor, that may be the case, but I don't believe that it's accurate. So the fact is that Sazerac consistently maintained that it wanted a royalty. It put in the license agreement. But initially it said it would disclose an expert later. That's right. But, Your Honor, an expert would only have done a fourth grade mathematics calculation of multiplying 50 cents. That's speculation at this point. I mean, maybe an expert would have said this is how this industry works and there are all these different kinds of royalties. I mean, we don't have any idea because you didn't have one. Sazerac was within its rights not to use an expert. It decided it didn't need an expert to put in this simple calculation to the jury that it wouldn't have aided the jury. And so then shouldn't it have said, OK, we've changed our mind. We're not going to use an expert. We're going to use the candy royalty and multiply it by the number of products. So, Your Honor, even assuming that that is true and that Sazerac could have done things differently, the fact is that there was no prejudice at the district court. But wait, so it's back up for a second. So so the district court says you haven't disclosed all this. You never said at that point, wait a second, you've changed this now to Rule 37 and we get to have larger findings. I mean, you never said any of that in the district court, did you? The Rule 26 argument was not raised in the district court until Fetzer's reply. That is not the basis on which they move for summary judgment. But you could have moved to strike the reply or ask for a surreply or said something in oral argument or ask for reconsideration. At the hearing on the summary judgment motion, we did point out that there was evidence of the license agreements, that we weren't required to use an expert and that we believe this was sufficient for a jury to find the license. I do. I'm just cognizant of time. I just wanted to point out with respect to the district court found that this that this was harmful and it couldn't be addressed with other sanctions because Fetzer was deprived of the opportunity to take third party discovery because it was waiting for the expert report. But by the time expert reports were due, fact discovery had long closed and it would have been too late. They they questioned Sazerac's witnesses about these license agreements in deposition during fact discovery. They knew they were important. If they had wanted third party discovery, they could have taken it. Their argument that they waited, they were waiting for an expert report to do that is disingenuous because they had no right to further fact discovery at the point they got an expert report. Did you raise the issue that Rule 37 requires findings of bad faith in order for terminating sanctions? Your Honor, we didn't have that opportunity because this this issue. Wasn't Rule 37 mentioned by Judge? It was not, Your Honor. Judge Orrick did not mention Rule 37 at the at the hearing or even in his summary judgment ruling. The Rule 26 argument didn't come up until reply. So Sazerac had no opportunity to brief it. And then the ruling that Judge Orrick issued did not mention Rule 37 and did not apply the Rule 37 factors. He did not consider willfulness or fault. He found that Sazerac didn't have a good faith basis not to use an expert, which of course was within its rights under the law. So there's no finding of willfulness or fault. And he even acknowledged at the summary judgment hearing that lesser sanctions were available. He acknowledged that he could allow Fetzer an opportunity to learn who would be testifying about our damages and then hire an expert to put on testimony to rebut it. The court even could have allowed them to put on an expert on that issue and not Sazerac, which is what happened in the Yeti case that Fetzer cites. But in the district court, when the district court says, okay, you can't present evidence of damages now, why didn't you say that's a Rule 37 sanction at this point and more findings are needed? Your Honor, I can't speak to why that issue wasn't raised, except that the partial summary judgment order was, of course, not appealable at that time and merged with the final judgment, which is why we're appealing it now. But you knew that there were going to be no damages at trial once he said that at summary judgment. So at that point, you could say, wait a second, you just took away our damages claim. You need to do Rule 37. But no one said that. That did come up in the argument, which is in the record, but the court disregarded it. There was no reason to believe that Judge Oreck would be ---- Could you give me a citation to where the requirements of Rule 37 were brought up at the motion of summary judgment? It wasn't specifically the argument that he hadn't considered the factors, because there was no discussion of Rule 37. It was the fact that the evidence was disclosed and there was no Rule 26 violation. So you concede that it was not specifically raised as a Rule 37 violation? Sazerac did not get an opportunity to raise that issue below on the summary judgment and that did not seek reconsideration or some other form of reconsideration by the district court. And we've submitted in the briefing that was not required. Okay. Fetzer hasn't put in any analysis or cases to say that it was. I know that you're under your associates time. Yes. Can you stop the clock? I do see the clock, Your Honor. Very quickly, I'll just hit on a couple of issues and I will turn it over to my colleague, Bobby Gajar. So with respect to the trade---- Go ahead with the clock now. She's going on. Thank you. With respect to the trademark infringement claim, the court did not even consider those claims under Sleetcraft. The court said that because Sazerac pointed to other aspects of the label, the use of bourbon barrel aged in small batch on Fetzer's bottle, the fact that they used other, the buffalo around the neck of the bottle, the similar lettering, the fact that these were sold in the same channels that we advertised, that that converted this somehow to a trade dress claim and then only analyzed a trade dress claim. And that was highly prejudicial because unlike the unregistered trade dress, the trademarks start with a presumption that they are valid and they're incontestable. They're also arbitrary and strong. You did a likelihood of confusion analysis. And wouldn't the likelihood of confusion analysis be the same under both? It's not, Your Honor. In two respects. The district court would have started with a presumption that the mark is valid and also because the mark is arbitrary, that it's strong. Okay. But if consumers aren't confused, that doesn't get you to the finish line. But the key factors for likelihood of confusion on both are what is the strength of the mark. Clearly, the goods are related under the case law of this circuit. And the marks looking at the logos are highly similar. Those other aspects only would have increased it. Those three factors strongly weighed in Sazerac's favor, the district court erred. The other, when it shifted the analysis to a trade dress analysis, it started with a presumption that the mark were not valid. And I can get into the errors on that as well. But the point is that infected the entire analysis. His starting proposition that the trade dress was not protectable, that it was not inherently distinctive, even after he found it conceptually strong and arbitrary to use a buffalo to sell bourbon. He then went on to require a finding of secondary meaning and conflated secondary meaning with inherent distinctiveness. And required evidence of consumer recognition, which this court has said has never been required to show conceptual strength and inherent distinctiveness. He misapplied the law under 2 pesos and Walmart. He then, starting with that proposition that these were not protectable marks and that this was not a protectable trade dress and it was weak, that colored his analysis of the strength of the mark. He then didn't consider the extensive evidence of use of this logo, the fact that it has been licensed, the fact that Sazerac has sold millions of bottles and invested millions of dollars a year in selling this brand. With respect to relatedness of goods, on summary judgment, he found that, of course, the goods are related and then he discounted that in the trial order saying, well, they're not sold in the same aisle. But that's not the test. Under Palm Wonderful and Stone Creek, it doesn't even have to be the same state. Here it's the same stores and the same at the end of the spirits aisle. They wanted to be the only wine at bourbon events. They were marketing to bourbon drinkers in bourbon magazines, calling their wine bourbon barrel aged and small batch and using a buffalo. There was no reason for them to use a buffalo except to reflect on the Sazerac brand. So you, a bunch of places in your briefs give us record sites that are supposed to show that Fetzer was aware of Sazerac's buffalo trace bourbon before its product launch. But when I look at those sites, they are almost all about things that happened after the product launch. So I'm having a lot of trouble understanding that part of your argument. For example, the recipe, one of the things is the recipe that has both kinds of alcohol. But by nature of having both kinds of alcohol, it must have been after the launch. So I don't understand how these things are supposed to show us that Fetzer was trying to copy buffalo trace, but when it launched the product. There was a lot of development and thought that went into what the wine would be, even as they were developing the, there was acknowledgment that they had seen, an executive Fetzer was aware of the mark before it launched. Your Honor, I'm just cognizant of time and wanted to make sure that my colleague had an opportunity to address the fee issue, unless there are any further questions that I can answer now on the trade dress and trademark claims. Good morning, Your Honors. May it please the Court. Bobby Gujar of Cooley on behalf of SASRAC. We don't even get into the merit of this Court's fee award if the Court reverses on any of the issues raised. Please speak up, Mr. Gujar. Thank you, Judge Mayotte. We don't even get into the merit of the fee order if the Court reverses on any of the other issues, but I want to talk about why this case is far from an exceptional case. This case, the lower court's decision on the fee order, that's the case that stands out from the rest. It stands out from C-Cult. It stands out from Globe-Phil. It stands out from a litany of cases decided by this Court pre- and post-Octane Fitness. And Octane Fitness is a case that the Court hung its hat on. And in that case, the Supreme Court observed it's a rare case, a rare case in which a party's unreasonable conduct, while not necessarily independently sanctionable, is nonetheless so exceptional to justify an award of fees. And in the interest of time, I'm going to streamline my argument. But in this case, a reasonable litigant, having received a 24-page order denying summary judgment against it, in which the Court found that a reasonable fact finder could find, in Sazerac's favor, on every single sleek craft factor, a reasonable litigant protecting a top 20 bourbon brand, a brand in which it's invested millions of dollars, a brand that has sold millions of bottles, would have proceeded to trial. This isn't a case that is so beyond the pale that the correct ruling is to punish the brand owner protecting its rights with an award of fees. So we're on abusive discretion review on this issue, right? Yes, Your Honor. So are you arguing that there was a mistake of law of some sort, or where was the abusive discretion? The Court applied the wrong legal standard. The legal standard, as I read from Octane Fitness, looks at certain findings. It looks at certain factors. And this Court has never, we struggled to find a case, the Court didn't cite one, Fetzer didn't cite one, in which the sole basis of a fee award was because a trial court disagreed with the merit of the case or some aspects of the evidence. It is not as though, Your Honor, Sazerac. What is exceptional case? I mean, it seems like what he was trying to say was this is exceptionally weak. Isn't that what exceptional case would be about? He said it was objectively and reasonable and frivolous, but the evidence doesn't bear that out. And in all of this Court's decisions, it has analyzed cases where courts have dismissed cases on a motion to dismiss or a motion for summary judgment, which says what? It says that the Court found the case so weak that no reasonable juror could find it. But so do you think there needs to be a rule of law that if summary judgment is denied, you can never have an exceptional case? No, I think that we could conceive of situations where that's not the case. The Court couldn't cite one, but for example, if somebody manufactures evidence and it later comes out at trial, then that could be a basis of a fee award between summary judgment and trial if fraud was shown, if someone perjured evidence. In a patent case out of circuit, there was arguments presented that the patent owner should have been aware and hid prior art that came out later. There is no such analogy – there are no such analogous facts here. Again, cognizant of time, I would just point the Court to its post-Octane rulings in C. Colt. An action is exceptional if the plaintiff has no reasonable or legal basis to believe its success on the merits. Even more recently, in the Syrups v. Itztai case, the Court affirmed no fees, the denial fees, where there are reasonable debates of law and fact, and there was a complicated factual record developed on summary judgment. I'll close with this. This is not a case where the Court found bad faith or frivolous conduct, litigation misconduct. It didn't find that this case was brought for an invalid purpose, and I don't think anybody could argue that. And it didn't articulate a deterrent need. It – the Court did not properly apply the Octane fitness standard, and this decision stands as a very dangerous precedent, and we ask the Court to reverse it. Thank you very much, Mr. Gannon. Mr. Arnott. Good morning, Your Honors, and may it please the Court. Robert Holtzappel on behalf of Fetzer Vineyards. My colleague, Steve Disharoon, and I are going to split our argument. I was going to take 15 minutes to discuss the motion for summary judgment order and the trial order. Mr. Disharoon will address any issues with respect to the fee order. I'd like to start with discussing the dismissal of the reasonable royalties remedy and a couple of issues that were not discussed in the earlier conversation. The first is that that dismissal is not the dismissal of a cause of action. It does not require, under Yeti by Mollie and under the Hoffman case, that the District Court make the Rule 37 findings that Sazerac contends needed to be made. The only way to harmonize – there are four key cases in this area. Those are Yeti by Mollie and Hoffman, R&R Sales and Toyrific. And the only way to harmonize those, which is in fact done in footnote 1 in Toyrific, is if you dismiss the damages remedy, that does not require Rule 37 findings. It's only if the court's discovery sanction leads to the dismissal of a cause of action that those findings are required at all. So how do you deal with R&R Sales? I don't think we can really rely on Toyrific because it's not published. So R&R Sales talks about how in R&R Sales what happened were the claim was for grant fees. The court held that there was a discovery violation that precluded the plaintiff from producing any evidence with respect to the grant fees, struck the damages remedy, and then entered judgment. Cause of action was gone because no damages could be shown. In this case, that did not happen. What happened in this case is very similar to what happened in both Hoffman and Yeti by Mollie. In both of those cases, the district court found that a discovery wrong prevented the plaintiff, or in one case the defendant, but in both cases prevented damages discovered or damages evidence from being produced. But in Yeti by Mollie, if I remember right, there was still a possibility of showing damages. There just couldn't be the expert. And then in Hoffman, there were like a lot of class, not class members, but joint plaintiffs, and there were a few who could still claim damages. So in neither of those cases were damages totally foreclosed. But in your case, damages were totally foreclosed. So it seems more like R&R Sales where damages are totally foreclosed. What you said is true with respect to Yeti by Mollie and Hoffman, that there was a sliver of damages left. But the point is, and the preclusion sanction here, I'm looking at in footnote 1 from R&R Sales, the R&R Sales court discussed Yeti by Mollie and said it was distinguishable because the preclusion sanction did not amount to dismissal of a cause of action. That's also what Hoffman says, that for Rule 37 to apply, you must have the dismissal of a cause of action. In this case, Judge Oreck's partial summary judgment order did not dismiss any cause of action as evidenced by the fact we had a trial. And so I think that's a good point, because they proceed with the injunction and then they get to have to pay fees for having done it. I mean, basically, this ended the case at least the way it played out, right, because he says they can't really go for injunctive relief either. That was frivolous now. Well, they shouldn't have gone for injunctive relief, is what Judge Oreck ultimately held, not that they could not, and no cause of action. I mean, we had a week-long trial. There were a lot of people who testified, all of which does not happen in either Yeti by Mollie or in Hoffman. And the distinction there that the only way I can see to harmonize those four cases is a discovery sanction that's onerous, that's difficult, that prejudices your ability to put on your case, that doesn't require Rule 37 findings. It's only if the cause of action is dismissed. But even assuming that's wrong, as a practical matter, Judge Oreck made the Rule 37 findings. And I'd like to call the Court's attention to, this is ER 86. It's page 23 of his order. And what Sazerac is complaining about is that Judge Oreck here did not make a finding of willfulness, fault, or bad faith. In effect, he did. He talks about how at the top of the page, this is page 23 of his order, that in its initial disclosures, Sazerac stated that it, quote, intends to develop specific methodologies in calculations of the foregoing remedies, reasonable royalty, and disgorgement of equitable share of profits through expert testimony. It represented that it would disclose an expert to prove damages. It never amended this disclosure. In fact, it did not disclose any damages calculation until shortly before the settlement conference. And if I skip down, this is at line 19 on page 23, the court writes, Sazerac does not offer any excuse, let alone one establishing good cause, for its failure to disclose the calculations or amend its initial disclosures in a timely way. The court also says in the order that Sazerac had the information that it subsequently said it would rely upon. At the time it made those initial disclosures. That is a finding of fault. That's all that's required under Rule 37. The only other requirement is that the court consider whether lesser sanctions might be appropriate. Judge Orrick specifically considered that. He says here, in his order, it's far too late in the game for Sazerac to change course without notice. I do not see how any prejudice could be remedied at this stage. So your opposing counsel just argued that you couldn't have done third-party discovery at that point anyway. Can you respond to that? Sure. We relied upon two things from Sazerac in discovery. One, they gave us declarations saying that, in fact, I'm sorry, not declarations, sworn interrogatory responses, which were offered to the court on the summary judgment, which said we have not licensed the marks or the trade dress. Second, they gave us the Rule 26 disclosure saying we're going to prove this up through an expert. We relied on those two things in our discovery plan, and when they didn't disclose an expert, that's why we moved for partial summary judgment. Why weren't there leasing agents or licensing agents who wanted to give an opinion that the licensing agreements on candy and cigars were, in their opinion, applicable to licensing for wine? Why isn't that opinion testimony? Why isn't that expert testimony? Two responses, Your Honor. The first is those licenses, or those purported licenses, I should say, were never cited by Sazerac as a basis for its reasonable royalty calculation. Well, you took their depositions and they showed the licenses. And let me get to that. The second point about those licenses, the evidence that was offered to the district court on summary judgment, those were unsigned licenses attached to a lawyer's declaration, which says in its entirety, my understanding is these are business records of my client. There was no evidence. But you didn't object to lack of proper authentication in the district court, did you? I don't recall, Your Honor. I don't believe it. I couldn't find any objection like that. I mean, it seems like if you had said, wait a second, this is a lawyer declaration, not someone from the company, they could have fixed that. So it feels a little late to be talking about lack of authentication. Well, two responses there, Your Honor. The first is, it's not our burden to show Sazerac how to offer admissible evidence to defeat a summary judgment motion, and it's their burden to do so. My point is, before the district court on summary judgment, there was no evidence, no admissible evidence at all of any license that had ever taken effect. No testimony to that effect, no signed document, no evidence that any product had in fact been sold. But more importantly, even if Sazerac had done what it was supposed to do and told us these are what we rely upon, these unsigned pieces of paper produced in discovery, we would have concluded those are so different, candy or cigars or whatever, even assuming they've come into effect, because Sazerac hasn't identified those as the basis for its damages, we wouldn't have spent the time and money to go out and depose those people. It's only if Sazerac had done what it was supposed to do, what it was obligated to do, and shown us that those documents were the basis, that we would have done the follow-up discovery. That's exactly what Judge Orrick discussed during the summary judgment motion. And he said, look, the only way I can solve this prejudice at this point would be to reopen discovery, continue the trial date. That's prejudicial to my client. And we cite a case in our brief which talks about that, that the Ninth Circuit has said it's prejudice if the court would have to, to cure the discovery violation, change the scheduling order, and change the trial date. I take it that this was what I was referring to earlier, that Judge Orrick thought there was sandbagging taking place. Because he had done his case management in one direction and now is being changed at the other. Is that a fair statement? And if so, how do you defend that? Why wouldn't he be just a nice guy and let them do what they want? I do know that Judge Orrick entered a scheduling order. It had discovery cut off several, several months before trial to allow the time for the summary judgment motions to be done. I can't really speak to whether he felt he was sandbagged. The fundamental point, though, Your Honor, is even assuming Rule 37 violations, I'm sorry, Rule 37 findings were required, Judge Orrick effectively made them. And if you fast forward, my client has an interest here, too. And the question is, are we going to be prejudiced because of Sazerac's discovery error? When you say that delaying the trial or reopening discovery would have been prejudiced, is there an absolute rule of law to that effect? I thought judges needed to consider whether that should be done. There's not an absolute. I'm not saying it's a bright-line rule that that is absolutely prejudiced. I'm saying it is one of the things that the court, the district court, in exercising its discretion as to whether to employ some other sort of sanction considers. So I thought that the most compelling point about the prejudice was this third-party discovery point, that, like, maybe they could have reopened normal discovery, pushed back the trial a little bit, but if you needed third-party discovery, that was just going to take forever, and that was totally unfair. But they're saying you couldn't have done third-party discovery anyway by the time you learned their damages theory had changed? Is that – how do you respond to that? I still didn't get that answer. I'm not sure I understand. If I understand their argument, what they're saying is they first disclosed the idea that they were going to rely upon these unsigned third-party licenses after discovery had closed. By the time this comes up at the motion for summary judgment, we're past the time we can take third-party discovery. What would have needed to have happened – and, in fact, Judge Oreck talked about this during the hearing – is he would have had to grant leave, force Sazerac to put up a 30 v. 6 witness on whatever its points were, give us time to go take the trial date. But it is true that by the time this was alerted to us, we were past the time we could serve a subpoena on a third party. And so the only way to cure that prejudice would have been to change the scheduling order. But your point is they should have disclosed it while fact discovery was still ongoing. Absolutely, Your Honor. Another – they should have disclosed it in their Rule 26 disclosures. These license agreements – again, unsigned, unauthenticated, no evidence they ever took effect – but these license agreements pre-date this litigation. If they were relying on these license agreements, they knew that before they filed their lawsuit, and they offered no excuse, none. So I was asking questions of your opposing counsel that were related to the idea that summary judgment could have just been granted on damages because they had no evidence of damages. But it doesn't seem like you really argued that. So am I right that that would be a new thing that no one has really had a chance to brief? No, Your Honor. In fact, we did move – we moved on two bases. One was the Rule 26. They said they'd have an expert. They don't have one. It should go away. Our second basis was exactly what you just identified. But in our court – like, so I don't think you've argued to us that summary judgment was appropriate anyway because these candy and cigar licenses were totally irrelevant. We didn't. And so there was no evidence of damages. We didn't make that argument, Your Honor. We did argue, and we do argue, that if the Court decides to do a de novo review of the summary judgment motion, then Judge Oreck's decision to grant partial summary judgment as to the reasonable royalties should be affirmed because there is no admissible evidence, none, from Sazerac that would allow anyone to determine what a reasonable royalty was. All they offered – and again, there's no evidence that any of these ever took effect – all they offered were these three unsigned license agreements in totally disparate markets. And so we do make that argument in our briefs about de novo review should apply. Your position was that Judge Oreck did make a Rule 37 finding regarding bad faith? Not bad faith, Your Honor, but fault. And yes, our position is that – But doesn't he have to make a bad faith finding under Rule 37? No, Your Honor. As I read the case law, it's willfulness, fault, or bad faith. And Judge Oreck found fault that Sazerac had this information from before the case began and didn't disclose it until – I can't remember what month, but literally, I think it was two months before trial. And he says in his order, Sazerac offers no excuse for having failed to do that. He does not use the word fault, but effectively, that is a finding of Sazerac's fault. Okay. Thank you. If I could very briefly just touch on the likelihood of confusion issue. And I think this is pretty much solved by the standard of review, which there's some disagreement in the papers about this, but the Ninth Circuit authority is crystal clear that both the likelihood of confusion determination and each of the determinations under each of the factors is reviewed for clear error. One of the cases that Sazerac cites in its reply – this is official airline guides. Versus Goss. Talks about – there are two things to note in this case that I think are interesting. One is that the district court found five factors favored the defendant. And the plaintiff was unhappy about the ultimate conclusion. What the court said is, and I'm quoting from page 1395, but as we have emphasized, the standard of review goes a long way towards deciding the case. But we must defer to the findings of fact of the district court and not reverse unless we have a firm and definite conviction that the court erred. In deciding whether the court clearly erred, we focused not on whether the eight sleek craft factors were applied perfectly, but on the district court's ultimate factual finding concerning likelihood of confusion. Considered in their entirety, the facts found by the district court support the ultimate factual conclusion. In this case, if you read Judge Oreck's trial order, there can be no doubt that the facts found by the district court support the ultimate factual conclusion. With that, I'd like to reserve the rest of the time for Mr. Disharoon. Thank you, Your Honors. Thank you, Your Honors. May it please the Court, Steve Disharoon, also on behalf of Fetzer Vineyards. So as Mr. Holtz-Appel explained, I'm going to be discussing the fee award, which involves also some underlying findings regarding injunctive relief and some related findings by the district court. I want to begin by addressing a few points raised in the opening argument. On this issue of whether denial of an MSJ, or at least not a full granting of MSJ, can be a bright-line rule for disallowing or not allowing the district court to exercise discretion in finding the case exceptional. And Sazerac presents the argument that, well, perhaps in a case where an MSJ involved manufactured evidence, fraud, or perjury. Now, Your Honors, those would unquestionably be Rule 11 violations. And the Supreme Court and Octane Fitness explicitly discussed this and determined that the exceptional case standard under the Lanham Act needs to be something less than a Rule 11 violation. So putting aside that argument, we are left with, from Sazerac, precisely the argument that an MSJ now becomes a bright-line determination for whether a case can be deemed exceptional. And we believe that requirement cannot be read into the legislature's creation of the exceptional case requirement in the Lanham Act. Going back, something that hasn't been addressed is this issue of appellate waiver that we raised in our opening brief, and specifically the Watek case. In large part, the fee award is based on the absence of evidence, really the absence of a presentation of evidence by Sazerac at the lower court on injunctive relief, especially irreparable harm, but also the other three factors required for injunctive relief. No assignment of error is made in Sazerac's brief on those underlying findings by the district court, which, of course, are reviewed for clear error. I want to address a few points they raise in their reply brief on this issue. First, they cite the case Manoz v. Small Business Administration. The way we read that case, Your Honors, is that has to do with appellate jurisdiction and whether there's a valid notice of appeal in the first instance. That's distinct from the issue we raise in our brief, which is whether there is a clear assignment of error as required by this court under Watek. They also address a couple criminal cases, U.S. v. Ula and U.S. v. Salmon. Those have to do with whether there is an exception to the rule, whether there's appellate waiver. Your Honors, those are distinguishable based on a number of factors that I can get into, but primarily because in that case, the responding party, the appellee, had the full opportunity to brief the issues and put forward to this court supplemental excerpts of record and another argument on the issue. In this case — So once the district court had said there can't be damages in this case, if it was so obvious that there couldn't be injunctive relief, why didn't you try to have another motion for summary judgment? Your Honor, that issue perhaps was not entirely obvious to Fetzer. That's information that was exclusively and uniquely known by Sazerac. In what sense? What did they know that you didn't know about this industry or what was going on or the confusion or anything? Your Honor, I think in hindsight, true, there's nothing that they knew that we didn't because there was no irreparable harm. But the argument and the claims that they put forward and claimed they had a genuine reasonable basis for was that their product, their brand was going to be irreparably harmed by the presentation of my client's product in the marketplace. That would have to be based on damage to goodwill, the lack of ability to do that. But didn't you know at that point that in discovery there had been no evidence of damage to goodwill? I mean, what ultimately happened at trial would have been based on evidence that had been produced in discovery. So I don't understand. If you didn't think it was worth seeking another motion for summary judgment, it seems like that draws into question a little bit how obvious this all was. Your Honor, I think we made a determination on moving for summary judgment on a handful of issues that we felt were particularly warranting of the Court's time and resources, that we felt the tribal issues were quite slim on. We, of course, were wrong in large part on what there were found to be tribal issues on, but successful in large part, too. I believe we reached our page limit on the motion and felt that we had sufficiently used our motion for summary judgment avenue up, if that makes sense. I think that it's an issue where after the Court had made clear that Judge Orrick determined there was enough evidence to present to a trier of fact, we wanted to accept and respect that determination. We went forward, but they presented nothing at trial despite five days of trial. We've taken you past your time. Okay. Thank you very much. Thank you very much. I'll give counsel two minutes, please. Thank you so much, Your Honor. A few quick points because that's all I have time for. With regard to Yeti, I think Judge Freeland, you were absolutely correct. Yeti involved the dismissal of evidence. This case involves the dismissal of a claim, and that is the big distinction here. And it's so important in this case where the fundamental right to a jury was at issue. The U.S. Supreme Court said that the district court said, hang on, you're getting rid of our jury right, we need to think about this more. I don't know that it was said to the district court in that way, Your Honor. But the fact is that this deprived Sazerac of a jury trial, and that the Supreme Court said the right to a jury trial is at issue, and there's any seeming curtailment of that, there has to be, this has to be addressed with the utmost of care, and that just wasn't done. The language that counsel read from Judge Oryk's opinion didn't find fault, as he said. He found that there was a Rule 26 violation, but the rule 37 findings, and you hadn't said our right to a jury trial is at stake, so it's a little hard now to blame him for not doing more, isn't it? We didn't know what the court would do in its summary judgment order, Your Honor. So it wouldn't have been possible to foresee that he would do what he ended up doing. But you knew what they were asking for, and he might grant it, so you have to tell him what impediments there are to the granting of the order that the other party wants. Your Honor, the other party didn't ever raise Rule 37, and we did not believe that the district court would be ordering a Rule 37. I'm trying to stop you from showing damages. That's an important part of your evidence, and that gives you a jury trial. And you never said to the judge, we can't stop us from proving damages in this way without making findings under Rule 37. We didn't do that, Your Honor, because we didn't believe that the district we didn't know that the district court was going to issue a Rule 37 sanction. Well, that's what they were asking for. Not until the reply brief, and then there was argument at summary judgment, about why we should be allowed to go to the jury on our damages claim. I wanted to point, Your Honor, to ER 1583. That's where in our summary judgment briefing we cited the cases establishing and explaining that these other license agreements on unrelated type goods could be used to support a royalty award. I wanted to point out that the argument that they've So it seems like that you're saying Sazerac has produced evidence demonstrating licensing agreements with third parties, which will give the jury a basis for calculating the royalty. And then you cite Hadid declaration. Do we have the Hadid declaration? I don't know the answer. I'm not sure that that's in the record, Your Honor. So how do we know, I mean, are you asking us to evaluate that? I was pointing, Your Honor, to the cases cited there for the proposition that license agreements of unrelated goods, even in different circumstances, can be considered to calculate royalties. There's also deposition testimony that the agreements were, in fact, entered and authenticated, that's a deposition testimony at record 1323 through 43. And the district court acknowledged that it couldn't have allowed Fetzer to hire an expert and put on that evidence at trial. There was two months between the summary judgment ruling and trial. Fetzer argues that the trial would have had to be moved, but that's not true. District courts allow additional depositions, even at pre-trial conferences, to address error. He acknowledged that was an available remedy, but then didn't even consider it or address it in his order. He also didn't find fault. He said that Sazerac didn't come up with an excuse. Well, negligence is not fault, and negligence can be unexcused. His ruling is tantamount that any Rule 26 violation, if you accept that that's sufficient, that any Rule 26 violation, whether there was willfulness or bad faith or fault or not, would trigger Rule 37 dismissal sanctions, the harshest sanction there is. And that can't be the law. Counsel, we've taken you past your time. Thank you very much. Thank you. The case of Sazerac versus Fetzer is submitted for decision.
judges: Wallace, Bea, Friedland